## Van Zyl et al., Appellants, *v.* Neitch.

Argued October 31, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edwin J. McDermott,* and with him *William Charles Brown,* for appellants.

*Algernon R. Clapp,* of *White, Schnader, Maris & Clapp,* for appellee.

OPINION BY TREXLER, P. J., January 4, 1935:

This is an action in trespass to recover for personal injuries sustained by a minor. The jury found for the plaintiffs who were the minor and his mother, but the court entered judgment n. o. v. for the defendant. Taking as we must the most favorable view of the testimony submitted by the plaintiffs we have come to the conclusion that the verdict should be sustained. The narratives of the minor plaintiff and his witnesses are to the effect that he was proceeding south on Fifth Street approaching Rockland Street. At the same time the defendant was coming westwardly on Rockland Street. The traffic at the intersection was controlled by an automatic signal. As the defendant neared the intersection the red light was displayed. The minor had started to cross the street, the green light being toward him and was struck by the left front of the defendant's car when he reached the center of the street. By that time the signal had changed

from red to yellow or "caution." When the boy started to cross the street he had the right of way and it was the duty of the defendant to avoid striking him after he was committed to the crossing, if the defendant had a reasonable chance of seeing him. The appellee concedes that this conclusion may be reached by picking out certain answers made by the plaintiffs' witnesses, but claims that taking their entire narratives they are so contradictory as to form no basis for a submission to a jury.

The plaintiff stated that he was in the middle of the pavement when struck. Later he stated, on cross-examination, that he passed two feet in front of a parked car, which stood on the north side of Rockland Street, the front of the parked car being in the line of the buildings on the east side of Fifth Street, or back of it about a foot or two. It is apparent that when he reached the curb he was on the crossing, or west of the extended house line of Fifth Street. He was then asked if the car was opposite a telegraph pole near the intersection of the street and he answered it was right along side of the telegraph pole, and apparently being confused, "the back of it—or the front of it—the middle of the car was right alongside of the telegraph pole." He was then shown a map and asked to identify the pole and did so. The map shows that the pole was sixteen feet four inches from the boundary line of Fifth Street.

We cannot hold, as a matter of law, that the whole of the minor's testimony must fall because he had a confused story as to the relative position of the parked car and the pole. There was evidence showing that he was struck in the middle of the pavement or pedestrian crossing and, after he was struck, he was lying in the middle of Rockland Street and within the line of Fifth Street. As to the discrepancy as to what the boy thought was the position of the telegraph pole and the

parked car that was for the jury to decide as to what the credible testimony was. Certainly we cannot take the position that if a witness, becomes confused upon cross-examination, and gives an answer which is not consistent with former testimony, and after being pressed, is uncertain about a fact, his whole testimony falls. If the boy had testified that he had been struck at the crossing and, upon cross-examination, stated he was fifty feet away any conclusion reached would be a guess, but that is not the situation in the present case. The witness's attention was not called to the inconsistency. We have an illustration in one of the witnesses produced by the defendant. He testifies that the accident occurred 60 feet away from the crossing, but a signed statement made by the same witness is to the effect that the boy was at the crossing. He was a policeman and, upon explanation of the signed statement, he said that he did not read it when he signed it. It was for the jury to decide what was the truth. The same may be said as to the variations in the testimony of the boy's companions. We all know that as a rule youthful witnesses are easily confused, and that cross-examination very often causes them to give narratives that are not entirely consistent.

The argument that there is no evidence of defendant's negligence cannot be maintained, for the testimony shows that the defendant with either the red or amber light before him ran down a pedestrian at a crossing. There were cars parked at the side street near the intersection which perhaps might have interfered with his view, but in such a case he should have proceeded with the utmost caution, and have his car under such control as to avoid striking the people on the crossing, who were proceeding at the customary speed employed by pedestrians. We may go even further than this: If yellow or "caution" was dis-

played, it was the driver's duty to stop before entering the intersection. See Act of May 1, 1929, P. L. 905, Art. 10, Section 1026, 1931 June 22, P. L. 751, Section 2, 75 PS 635.

The judgment is reversed and the record is remitted with direction to enter judgment on the verdict.

And now, January 25, 1935, so much of the judgment of the court entered January 4, 1935, as renders judgment on the verdicts for the plaintiffs is now reconsidered and rescinded, and the record is remitted with authority to the court below, if it so desires, to vacate its order discharging the rule for a new trial and to enter such order or judgment (other than the one reversed) as law and right require.